UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

CHARLIE JAHNKE, JENNY JAHNKE
and GLOBAL IMAGING ACQUISITIONS
GROUP, LLC,

        Plaintiff,

   v.

FREDERIC L. GORDON, GORDON+HOLMES,
ANDREW G. NAGURNEY, ABC INSURANCE
COMPANY and DEF INSURANCE COMPANY,

        Defendants.

Case No.: 18-cv-1972

## PLAINTIFFS' IN OPPOSITION TO DEFENDANTS' MOTION FOR CHANGE OF VENUE AND IN OPPOSITION TO ENFORCE THE ARBITRATION AGREEMENT

Plaintiffs, by their attorneys, Cade Law Group LLC, hereby respond to Defendants' Motion to Transfer Venue. Defendants seek a motion to transfer venue to the United States District Court for the Southern District of California. However, what Defendants really seek is a motion to enforce the arbitration language in the Contingent Fee Agreement ("Agreement") between Plaintiff Global Imaging Acquisitions Group LLC ("GIAG") and Defendant Gordon+Holmes ("Law Firm"), not to actually transfer and litigate this matter in the Southern District of California.

Here, Defendants seek to require all three Plaintiffs to arbitrate their claims in California before Judicate West. *See* Declaration of Nathaniel Cade, Jr. ("Cade Decl."), at Ex. A, at pp.2-3. A motion to enforce an arbitration agreement is reviewed under a summary judgment standard. *Tickanen v. Harris & Harris, Ltd.*, 461 F.Supp.2d 863, 866 (E.D. Wis. 2006)(citations omitted). Under a summary judgment standard, all facts,

evidence and inferences must be taken in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986); *Equip, Inc. v. Smith-McDonald Corp.*, 655 F.2d 115, 118 (7th Cir. 1981).

**I.    PLAINTIFFS CHARLIE JAHNKE AND JENNY JAHNKE ARE NOT PARTIES TO THE AGREEMENT AND DID NOT PERSONALLY CONSENT TO HAVE THEIR DISPUTE HEARD IN CALIFORNIA.**

There is no dispute that federal law strongly favors arbitration.[1] However, lost in Defendants' motion to transfer venue is the fact that two of the Plaintiffs, Charlie and Jenny Jahnke, and two of the defendants, Fred Gordon and Andrew Nagurney are not parties to the Agreement. While this Court may presume that Defendants Gordon and Nagurney agree to arbitrate, nowhere in the Agreement does it identify Charlie or Jenny Jahnke as parties to the Agreement. Theoretically, the fact that the Jahnkes are not parties to the Agreement should end the dispute and serve as a basis for denial of this motion. *Scheuer v. Fromm Family Foods LLC*, 202 F.Supp.3d 1040, 1043 (W.D. Wis. 2016), citing *Everett v. Paul Davis Restoration, Inc.*, 771 F.2d 380, 383 (7th Cir. 2014). "However, the obligation to arbitrate a dispute is not always limited to those who have personally signed an agreement containing a[n arbitration] provision." *Scheuer*, 202 F.Supp. at 1043, citing *Everett*, 771 F.2d at 383.

The Supreme Court has held that "traditional principles of state law" govern whether a contract that contains an arbitration agreement is enforceable against a non-

---

[1] *But see Converting/Biophile Laboratories, Inc. v. Ludlow Composites Corp.,* 2006 WI App 187, ¶¶ 20-27, 296 Wis. 2d 273, 722 N.W.2d 633 for the proposition that the requirement to arbitrate, as between GIAG and Law Firm, is not exclusive to the forums identified in the arbitration section of the Agreement because the forum selection language is permissive as opposed to mandatory. Here, Defendants do not dispute that this Court has jurisdiction over them. Defendants cannot point to anything suggesting that Plaintiffs availed themselves and agreed to the jurisdiction of the Southern District of California, to the San Diego Bar Association, the State Bar of California or Judicate West.

2

party. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31, 129 S. Ct. 1896 (citations omitted). Thus, the threshold question becomes whether Wisconsin law allow Defendants to compel Charlie and Jenny Jahnke to arbitrate their disputes against Defendants? The short answer is no.

In Wisconsin,

> [a]n arbitrator's power to make an award is derived from and limited by the contract authorizing or requiring arbitration. *City of Milwaukee v. Milwaukee Police Ass'n.,* 97 Wis.2d 15, 25, 292 N.W.2d 841, 846 (1980). It is axiomatic that the disputing parties must be bound by a contract to arbitrate before an arbitrator has any authority to act. Unless the parties agree to submit the issue of arbitrability to the arbitrator, this issue is a legal question to be resolved by the courts. *Joint School Dist. No. 10 v. Jefferson Educ. Ass'n,* 78 Wis.2d 94, 101-02, 253 N.W.2d 536, 540 (1977).

*Scholl v. Lundberg*, 178 Wis. 2d 259, 264, 504 N.W.2d 115 (Wis. Ct. App. 1993).

Here, Defendants fail to put forth any evidence that the Jahnkes personally agreed to arbitrate their disputes, as they are not parties to the Agreement, nor have Defendants argued that any of the potential exceptions to permit enforcement of an arbitration agreement against a third-party applies here.

In addition, as noted, the Agreement fails to identify Defendants Fred Gordon or Andrew Nagurney as parties to the Agreement. Instead, the Agreement only identifies Law Firm and GIAG as the parties. Even if this Court were to determine that the dispute between Law Firm and GIAG is arbitrable under the Agreement, the parties did not agree that claims against Defendants Gordon and Nagurney are arbitrable, especially where Law Firm is the drafter of the Agreement, not the Plaintiffs. *Dieter v. Chrysler Corp.*, 2000 WI 45, ¶15, 234 Wis. 2d 670, 610 N.W.2d 832

Finally, in order to enforce the Agreement, which was a contingent fee agreement, it not only had to be in writing but also had to "signed by the client." Wisconsin Supreme

Court Rule 20:1.5(c)("A fee may be contingent on the outcome of the matter for which the service is rendered, . . . A contingent fee agreement shall be in a writing signed by the client . . . ."). There is no California equivalent at the time this lawsuit was filed or when the Agreement was entered into by Law Firm and GIAG.[2] Here, neither Charlie Jahnke nor Jenny Jahnke signed the Agreement, and thus, are not bound by such a contingent fee agreement.

## II. DEFENDANTS REPRESENTED JENNY JAHNKE IN THE FEDERAL LITIGATION WITHOUT A FEE AGREEMENT.

In addition, Defendants terse factual recitation in their brief fail to raise a specific point. Jenny Jahnke was personally sued in the Eastern District of Wisconsin by Keith Rubenstein et al in a separate lawsuit, not the original lawsuit identified in the Agreement, and Defendants represented Jenny Jahnke in that lawsuit. *See Keith Rubenstein v. Jennifer Jahnke*, E.D. Wisconsin Case 2:14-CV-00648-LA (hereinafter, "Rubenstein Litigation"), which was consolidated into the underlying litigation between Rubensetin and GIAG in which Defendants represented GIAG and Jennifer Jahnke (*Global Imaging Acquisitions Group LLC v. Keith Rubenstein et al.*, E.D. Wisconsin Case 2:14-Cv-0635-LA).

In this lawsuit, Jenny Jahnke alleges that Defendants were negligent, among other things, in their representation of her in the Rubenstein Litigation. However, no fee agreement or agreement to arbitrate her potential malpractice claim exists nor did any of

---

[2] Prior to November 2018, California was the only state that did not follow the American bar Association's Model Rules and instead, followed its own disciplinary rules. *See* Cade Decl., Ex. 2 ("1992 California Rules of Professional Conduct", which were in effect from September 14, 1992 to October 31, 2018).

4

the Defendants request that Jenny Jahnke sign such an agreement. Thus, as noted above, this should serve as another basis to deny the motion to arbitrate.

### III. THE FEE AGREEMENT BETWEEN GLOBAL IMAGING AND GORDON+HOLMES IS *VOID AB INITIO*.

The Agreement is not your typical contingent fee agreement, in which a law firm receives a stated percentage of the damages recovered as the lawyer's fee, or alternatively, one in which a law firm receives the higher of the damages or an attorney's fees recovered. No, the Agreement went much further than that. This Agreement provides that GIAG and Law Firm are to split not only the damages recovered, but also any legal fees recovered:

> The contingent fee also applies to any recovery of costs and/or attorneys' fees as well. Thus, to illustrate by using purely arbitrary numbers (not intended in any way to represent anticipated or expected recovery, but rather, selected only because they simply illustrate the point), should a settlement, judgment, or other recovery be valued at $100,000, Clients' share would be $75,000 and Attorneys' share would be $25,000. If attorneys' fees are obtained in addition by way of settlement, judgment, or otherwise in the amount of $100,000, Clients' share of that additional recovery would be $75,000, and Attorneys' share would be $25,000. Thus, in this example, Clients' total share would be $150,000 and Attorneys' total share would be $50,000.

Cade Decl., at Ex. 1, at pp.1-2. Interestingly, the Agreement does not contain a choice of law provision, but that is of no moment for this motion, as the result is the same.

In Wisconsin, it is illegal to agree "to share a fee" with a client. Wisconsin Supreme Court Rule 5.4(a)("A lawyer or law firm shall not share legal fees with a nonlawyer . . . ."). It also is illegal to share fees in California. *See* California Rules of Professional Conduct, at Rule 1-320(a)("Neither a member nor a law firm shall directly or indirectly share legal fees with a person who is not a lawyer . . . ."); *McIntosh v. Mills*, 17 Cal. Rptr. 3d 66, 74-

75 (Cal. Ct. App. 2004) *See also* American Bar Association Model Rules of Professional Responsibility ("Model Rule") at Rule 5.4(a).

Law Firm violated SCR 20:5.4 and Rule 1-320(a) by drafting and entering into an agreement with its client, GIAG, to share fees. That makes the Agreement void as a matter of law (void *ab initio)*, not voidable. And when confronted with a law that is void *ab initio*, the proper step is to throw the contract out as if it never occurred. *Laborers's Pension Fund v. A&C Environmental, Inc.*, 301 F.3d 768, 779 (7th Cir. 2002)("Fraud in the execution results in the agreement being void *ab initio,* whereas fraud in the inducement makes the transaction merely voidable.")(citations omitted). If the Agreement is void *ab initio*, than that means that the agreement to arbitrate between Law Firm and GIAG is unenforceable.

## CONCLUSION

For the reasons stated herein, Plaintiffs request that the Court deny Defendants motion to enforce the arbitration agreement, disguised as a motion to transfer venue, an allow the parties to proceed to discovery. In the alternative, Plaintiffs Charlie Jahnke and Jenny Jahnke request that there claims against Defendants be allowed to proceed in this Court, as they are not signatories to the Agreement.

Dated this 21st day of January, 2019.

**CADE LAW GROUP LLC**

By: _____
Nathaniel Cade, Jr., SBN 1028115
P.O. Box 170887
Milwaukee, WI 53217
(414) 255-3802 (o)
(414) 255-3804 (f)
nate@cade-law.com
Attorneys for Plaintiffs
